## THE TOLEDO ELECTRIC ST. RY. CO. v. LULU TUCKER.

1. RECOVERY OF EXPENSES INCURRED FOR EMPLOYING PHYSICIANS BY PERSON INJURED.

In an action to recover damages for injuries sustained by plaintiff, resulting from a collision of cars on a street railway, the plaintiff may recover, as part of her damages, the amount that she expended, and what she may reasonably expect to expend in order to cure herself of such injuries received through the fault or negligence of the defendant.

2. ADMISSION OF EVIDENCE SHOWING WHAT THE EXPENSES INCURRED WERE.

In such action, the petition need not allege with definiteness the amount so expended, and in the absence of a motion to make it more definite and certain, plaintiff may introduce evidence showing what the expenses thus incurred were, and it is not error for the court to charge the jury that plaintiff " is entitled to recover for any expense that she may have been to, as shown by the evidence in the case, for medical services or attendance, in endeavoring to cure herself of the injuries which she has sustained."

ERROR.

KING, J.

Miss Lulu Tucker brought her action in the court of common pleas against The Toledo Electric Street Railway Company to recover damages for an injury sustained by her, which came from a collision of cars on the street railway of defendant below. She set forth in her petition her claim as to the negligence of the defendant company, also the injury which she received, and made some averments as to expenses on her part. To this there was an answer denying all the allegations of negligence, averring that she was guilty of negligence which contributed to the injury, and averring affirmatively that the agents of the street railway company conducted their cars in a safe and proper manner.

On the trial the negligence of the company was not seriously controverted, and upon the argument here, it was conceded that the company were negligent, and were liable. The trial resulted in a verdict in favor of the plaintiff for $3,000. On defendant's motion for a new trial, the court directed a new trial to be granted unless the plaintiff should remit a thousand dollars of the verdict, which she consented to do, whereupon the court overruled the motion for a new trial, and entered judgment for $2,000.

We are asked to reverse that judgment on account of error in admitting certain testimony, and of error of the court in its charge to the jury, and, because the damages are excessive.

The testimony complained of and the charge of the court to the jury relates to the right of the plaintiff to recover expenses incurred by her for employing physicians. Two witnesses were called who testified that they treated her during her illness. The first was Dr. Henzler, who was called at the time of her injury, and treated her more or less from that time or, for a while; and in February, 1895, Dr. Coldham was called, who treated her along until the time of the trial. Dr. Coldham was asked, when he was on the stand, how much his bill was for treating the plaintiff. The court instructed him that he could answer as to the amount of his bill incurred in treating her for the injury, but must not include with it any part of his bill for time spent in making an examination of her in order to testify in the case as a witness. He thereupon replied that he did not know exactly what it was; that he could tell by going to his office and looking at his books; but he wound up his testimony with the statement that his bill was about $35. Dr. Henzler testified also to visiting the plaintiff and his treatment of her at various times, in the same manner that Dr. Coldham had testified. When asked about his bill, he didn't know. After three or four questions put to him, he thought probably he had rendered a bill at one time of $65, and probably there had been incurred since that time about $30 more; and he concludes, after the examination had proceeded at some length, that his bill must be about $95.

The court charged the jury upon that subject, that plaintiff "is entitled to recover for any expense that she may have been to, as shown by the evidence in the case, for medical services or attendance, in endeavoring to cure herself of the injuries which she has sustained."

It is claimed that the evidence was not competent, because there was no allegation in the petition. The allegation upon that subject in the petition is that she "has been put to an expense of —— dollars" (there is a blank preceding the word "dollars"), "for medical attendance in attempting to be cured of her said injuries, to her damage of $5,000."

We think that the rule is clear, that plaintiff may recover what she has expended, and what she may reasonably expect to expend, in order to cure herself of an injury that has been received through the fault or negligence of the defendant. And I may as well say at this point, that we think the allegation in the petition is barely sufficient to admit that kind of evidence. It is an allegation that she has been put to an expense in procuring medical attendance to cure herself; and we are not yet prepared to hold, and will not, until it has been settled to be the law, that it is necessary to allege the amount with definiteness, in the absence of a motion, to make the petition more definite and certain. Of course the defendant, when the petition was filed, could have come into court and have taken advantage of that allegation, as it could have of any other that was indefinite, by a motion to make it more definite and certain. It is quite likely the court would have sustained that kind of a motion, and directed the plaintiff to allege what her actual expenses were up to the time of the filing of the petition; but in the absence of that motion, we think that allegation was sufficient to admit this evidence. This evidence is neither very clear, certain, nor definite, but it is some evidence tending to show that the physicians had rendered services of value, and that they had a value, and that that value, as nearly as the physicians were

able to state it, either from their recollection of the amount of the services or from what they remembered as to the amount of the different bills, was in the one case, $35, and in the other, $95. That was some evidence to go to the jury on that point. The court charged the jury that they might allow for them such an amount as they should find from the evidence in the case had been expended by her, or for which a liability had been incurred by her.

I refer to a case or two on that subject, but in the first place to a book that happens to be here—Jones on "Negligence of Municipal Corporations," pages 499 and 500—where it is stated in the text that—

"All reasonable expenses will be allowed as incidental to the cure of the plaintiff, which were incurred by him for the purpose of regaining his health. The amount paid physicians and nurses, and the amount which it is reasonable to conclude will have to be paid in the future, if the injury is of a permanent character, may all be proved, and may be recovered from the defendant."

It will be noticed that this author states that this kind of a recovery is incidental to the action. It is not a main feature of the cause of action. In the second place, that it may be recoved for the future. And it must have occurred to us all that it would be problematic, to a certain degree, as the witness could only give a guess, or form an opinion from the present condition of the plaintiff, as to what would have to be expended in the future. Yet the courts hold that the jury may give damages for medical services still to be rendered, so they may undoubtedly give judgment on account of those which have already been rendered. This author cites as authority, 73 Ia., 241; Sedgwick on Damages, 8th ed., section 483; Shearman and Redfield on Negligence, section 759.

So we conclude there was no error on the part of the court, either in the admission of the evidence or its charge on that point.

Another point is, that the verdict was excessive. We are not able to agree with the counsel for plaintiff in error on that point. Personally, I am not able from reading this bill of exceptions, to understand why the court of common pleas should have seen fit to reduce this verdict; but the court did, and the plaintiff accepted the reduction, and judgment was rendered for that amount.

The evidence shows that this woman was suffering very badly at the time of the trial at the April term, 1896, from the injury, which she received in September, 1894, or at any rate in the fall of 1894; that she was unable to work at her employment at that time, scarcely any at all. Some of the physicians testified that it was a permanent injury; others that she may recover; but none of them could even guess within what length of time she would become a well woman. She was earning $10 a week at the time of her injury. She had worked at the place where she was working at the time of her injury for many years, and was undoubtedly a trusted employee; and if the business had continued, and she had continued her health, she would no doubt have staid there.

It is argued here that she went to work before she ought to, and thereby contributed to her injury, and considerable stress is put upon that point. A charge was submitted by the court to the jury as drafted by counsel for the defendant, which put the law on that subject as strong as it could be claimed to be by anybody. The question of this plaintiff's injury and suffering and the amount she was entitled to recover is not to

be reduced by a mistake of judgment on her part as to what course of conduct she should pursue. There is no answer in this case averring that the plaintiff was negligent after she received this injury. It is averred that it was caused by her negligence, but that was abandoned on the trial, and the claim set up in the testimony that she was negligent in her conduct after her injury. We think the jury well found that claim against the railroad company. The doctors testified that they told her she might work, and she went to work. After she had stood upon her feet for a while she found that this injury grew worse, until she had to quit work. Her purpose in going to work was the very best; and counsel in the argument conceded that she had good motives in going to work. If she had good motives in going to work, and it was such a thing as a person in her condition and circumstances, exercising ordinary care and prudence, would have done, then she was not negligent in going to work too soon. And the fact that the physicians virtually told her that she might work, would be very strong evidence, I think, to convince a jury that she had not acted negligently in undertaking to work before she ought to work. The injury was to her knee, a very tender and difficult part of the human anatomy to treat; and physicians all say they cannot tell—and that I think is the experience of any of us who know of those injuries—how long an injury of that kind will last, or whether it will ever be cured. The formation of the bones at that point, and their action is so peculiar, when their possessor undertakes to stand or walk upon the foot, that a physician cannot tell, unless he knows exactly and completely what the injury is, and without some interior examination, they are not able to determine what the injury consists of. I think the jury might well have determined that she was not guilty of negligence in going to work, and might well have concluded that the company was liable for all the consequences of that injury. Upon that question I will cite again from Jones on Negligence of Muncipal Corporations, at page 515, a case referred to by the author, which is reported in 60 Hun., 567. That was a case where a woman fell upon a sidewalk and injured her ankle, and it was claimed that she should not have used it. The court said :

"We cannot, therefore, accede to the proposition made by the learned counsel for the defendant, that there rested upon the plaintiff the absolute necessity of not using her ankle until such time as the same should be fully restored, nor that the defendant is in any position to claim that the bare possibility of such improper use of the ankle should redound to its benefit.

"There is no principle of law which supports such contention, where the good faith of the party is not, but his ignorance alone is impugned. The duty rested upon the plaintiff to take proper care of the injured ankle, and not wantonly, carelessly or needlessly, to do any act which would aggravate the injuries to it. Her duty toward that member, however, was not so great and exclusive as to require her, in the absence of competent and positive medical instructions, to ignore and openly disregard the welfare of the rest of her members, and of her whole body. So long as she acted in good faith, and according to such lights as she had, the defendant, the party guilty of the wrong, cannot be permitted to complain of her mistake of judgment in the treatment of her ankle; nor successfully to claim that no liability should attach to itself, because the amount of compensation which should be awarded against it for its wrong is difficult or impossible of sep-

aration from the aggravations thereof accompanying an honest but mistaken treatment."

This case, I think, states the law as it is now understood. There is another case in which reference is made to this same subject—69 N. Y., 264. So that we conclude on this examination—and those are the only questions submitted to us—that there is no error in this judgment, and it will be affirmed.

*Smith & Baker*, for Plaintiff in Error.

*A. H. Coldhan* and *S. Kohn*, for Defendant in Error.